## ODOM v. BEVERLY.

1. In suit for partition, the questions were whether certain deeds of intestate to the parties had been delivered, and if so, whether the lands so conveyed had been paid for or were advancements. In this suit, it was determined that a tract of land in the possession of the husband of one of the distributees had been in part paid for by him and his wife. *Held*, that this did not adjudge as between this party and his wife, that such payment had been made by the husband and wife jointly and not by the husband alone.

2. Findings of fact by the Circuit Judge, from written testimony submitted to him, approved.

3. Where one pays money on land under contract to purchase, and this land is afterwards conveyed by the vendor to the wife of this vendee for and "during her natural life, and after her decease to the heirs of her body" forever, the husband has an interest in this land, by way of resulting trust, to the extent of his payment, and, the remaining interest conveyed to the wife being a fee conditional, he is entitled to hold such interest for his life-time as tenant by the curtesy, free from accountability to her heirs for rent accruing after her death.

Before PRESSLEY, J., Marlboro, February, 1889.

Action by the heirs of Elizabeth Beverly against the widow and children of Alexander Beverly, commenced August 8, 1888. The opinion states the case.

*Messrs. D. D. McColl* and *T. W. Bouchier*, for appellants.

*Messrs. Townsend & McLaurin*, contra.

February 19, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The facts of this case seem to be as follows: In 1850 one Alexander Beverly contracted to purchase the tract of land in controversy, containing one hundred acres, from his father-in-law, one James Odom, at five hundred

and sixty-five dollars. The said Alexander and his wife, Elizabeth, a daughter of the said James Odom, went immediately into possession, and continued in possession, it appears, under this contract until 1854, when the said James Odom executed a conveyance of the said land "in consideration of the natural love and affection" which he had for his daughter, Elizabeth, to his said daughter and her husband, "to have and to hold all and singular the said premises, to use and enjoy the said premises during her natural life without rendering any account of profits, free of rents or charges whatever, and after the decease of my (his) said daughter, Elizabeth, to the heirs of her body," &c., &c. A few days before this conveyance was executed, James Odom acknowledged in a receipt that he had received from Alexander Beverly $370.80, in part payment of this land.

Some time after this, James Odom departed this life, and subsequent thereto a proceeding was instituted in the then Court of Equity for the settlement of his estate. In the progress of this proceeding, it appearing that several of the children of the said Odom were in possession of certain land formerly belonging to him, the question arose, whether these lands were advancements to be accounted for by the said children ; to determine which, Chancellor Dunkin ordered issues to be referred to the Court of Common Pleas for Marlboro County, for the purpose of trying the title to the said lands. Among the lands thus involved was the tract in possession of Alexander and Elizabeth. These issues were heard, but at the trial the jury was restricted to the question, whether the several deeds had been delivered, which by the verdicts was affirmed ; and the case coming up before Chancellor Lesesne, he decreed "that the several papers mentioned in the pleadings, purporting to give certain lands to the defendants, Elizabeth Beverly and others, and which were found by the Court of Common Pleas to have been duly delivered, are valid deeds, and vested the title in said lands in the respective parties, according to their terms."

But, inasmuch as it had not been determined whether or not the grantees in said deeds had paid anything as purchase money, he further ordered and decreed that it be referred to the commissioners to inquire and report whether any of said parties had paid

any, and what, sums to the intestate, and what balances remained unpaid; and further, that a writ in partition issue to make partition of the lands of which the intestate died seized and possessed, &c. Under this order of reference, the commissioner reported, as to the land in possession of Alexander Beverly and Elizabeth, his wife, that he found that the said Alexander and the said Elizabeth had purchased from the said James Odom during his life one hundred acres (the tract now in question) for $565, and that they had paid the sum of $370.80. as appeared from a receipt given to said Alexander and Elizabeth, dated the 28th day of September, 1854, and that the balance due by them, with interest computed from the date of the purchase to the time of this payment, and from that time to the date of the execution of the deed, was $370.03, no interest being charged after the date of the deed, because the land was conveyed free of rent or profits. On this report, Chancellor Carroll ordered that the balance due by Alexander and Elizabeth upon the land purchased by them be set off against their claims *pro tanto*, their share of the lands in commissioner's office given for the purchase money of the estate lands of James Odom, deceased, &c.

Elizabeth Beverly died, leaving her husband and several children surviving her. Her husband retained possession of this tract of land until his death in 1888; and in the meantime he had married a second time, and at his death he left the defendant, Lucy E., his widow, and the other defendants, his children by the second marriage, surviving him.

Under this state of facts, the plaintiffs, heirs of the said Elizabeth, commenced the action below for the partition of this tract of land and other lands alleged by the plaintiffs to have belonged to the said Elizabeth at her death, and also claiming that the estate of Alexander Beverly should account for the rents and profits of the 100 acre tract since the death of the said Elizabeth, the controversy here being only as to the hundred acre tract mentioned above. The case came up before his honor, Judge Pressley, who, considering that only two questions were involved, to wit, what was the respective interests of Alexander and Elizabeth in the said land, and whether the estate of the said Alexander should account for the rents and profits of the share of Elizabeth therein,

proceeded to adjudge said questions. No testimony seems to have been introduced, except the proceeding in equity above referred to, to settle the estate of James Odom, and Judge Pressley decreed upon these questions: First. That in the settlement of the estate of James Odom (in the case above mentioned), it was decided that the advancement was only the remainder of the purchase money after the payment by Alexander Beverly of the $375.80 above, which remainder, according to the report of the commissioner, was $370.03: and that the said Alexander had, before this report, received of the share of the said Elizabeth much more than enough to pay this balance. He therefore adjudged that said land was subject to partition between the heirs of the said Alexander and of the said Elizabeth, respectively, in the proportion to "the interest each had in the said land according to the said payments. He further adjudged and decreed, that the share of the said Elizabeth in said lands was a fee conditional, and, as the land was at the death of Elizabeth, the said Alexander had a life estate in her share as tenant by the curtesy. His estate is therefore not to account for any rents and profits during his life."

From this decree the plaintiffs appealed upon exceptions as follows: "I. Because his honor erred in holding that Alexander Beverly was entitled to any part of the land. II. Because his honor erred in holding that Alexander Beverly paid three hundred and seventy-five dollars and eighty cents as part of the purchase money for said tract, when the record shows that said amount was paid by Alexander and Elizabeth Beverly. III. Because his honor erred in holding that 'it was decided that said advancement was only the remainder of the purchase money of said land,' when there is nothing deciding that fact. IV. Because his honor erred in not holding that said land was subject to partition only among the heirs of Elizabeth. V. Because the whole question was *res adjudicata*, and his honor erred in not so holding."

The two first exceptions raise substantially the same question, to wit, whether any part of the land belonged to Alexander Beverly. We think his honor's finding upon this matter should be sustained. There is no doubt that the record of the equity case mentioned, shows that Alexander contracted for the purchase of the land in 1850, and that a short time before the execution of

the deed in 1854, James Odom gave him a receipt for $370.80 paid on this purchase, the receipt appearing in the record being as follows: "September 25th, 1854. Received of Alexander Beverly three hundred and seventy dollars and eighty cents, in part payment for the lands whereon he now resides." It is true, C. P. Townsend, commissioner in equity in 1866, reported that this receipt was given to Alexander Beverly and wife for so much money which they paid. But it must be remembered that the question under consideration then was not by whom this payment was made, but whether any payment had been made, so as to determine whether any portion of the land, and if so, how much, should be regarded as an advancement to Elizabeth; and. it was found that a certain portion still remained due, which was set off as an advancement to her. The entire question in the equity case as to the lands in the possession of the children of James Odom, including the tract of 100 acres conveyed to Elizabeth, was, first, whether the deeds executed had been delivered; and, second, whether the purchase money had been paid, or whether the lands had been conveyed as advancements; and these were the questions really adjudged and decreed, not involving the question as to the respective interests of Alexander and Elizabeth, nor whether the payment of the $370.03 was made exclusively by the one or the other, or by both.

Under these circumstances, we think the question of payment, that is, by whom made, as between the heirs of Alexander and Elizabeth, and as to the respective interests of the said Alexander and Elizabeth in the land, was an open question before Judge Pressley. And we think, from the evidence furnished by the record in the equity cause *supra*, that he decided these questions correctly, to wit, that Alexander paid on the purchase the sum of $375.08, which, by operation of a resulting tust, gave him an interest to that extent in the land (this payment should be $370.08, which, no doubt, was the amount intended by the Circuit Judge); that Elizabeth received the balance as an advancement, that balance being $370.03, and to that extent she had an interest in the land as a fee conditional; that the interest of Alexander is subject to partition amongst his heirs, and the interest of Elizabeth amongst her heirs as a fee conditional; and, further, that Alex-

ander was entitled to hold the land during his life, after the death of Elizabeth, as tenant by the curtesy as to her interest, and as owner of his own interest, and therefore that his estate is not liable for rents and profits for such holding.  *Withers* v. *Jenkins*, 14 S. C., 597.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, except that the payment by Alexander should be $370.08 instead of $375.08.